STATE OF CONNECTICUT *v.* RICK MANINI
(12171)

O'CONNELL, SCHALLER and FREEDMAN, Js.

Argued September 19, 1994—decision released June 6, 1995

*Sheila Huddleston,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, and *David Gold,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation

of General Statutes § 53a-70 (a) (1)[1] and two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1).[2] The dispositive issue on appeal is whether the trial court improperly excluded evidence of the victim's prior claims of sexual assault pursuant to Connecticut's rape shield statute, General Statutes § 54-86f.[3] The defendant also claims that the

[1] General Statutes § 53a-70 provides in pertinent part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-72a provides in pertinent part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

trial court improperly denied his request to order the victim to undergo an independent psychiatric examination, and permitted the prosecution to make a *Secondino* argument; see *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960); without a proper foundation or advance permission from the court.[4] We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, L, suffered from schizophrenia since at least 1978, and had been hospitalized for acute psychotic episodes in 1979, 1983, and 1984. She had not been hospitalized since 1984, but had been taking a high dosage of an antipsychotic medication, prolixin. She married in September, 1983, and had a daughter in September, 1984.

In 1989, L took a part-time job at an Ames department store at Centennial Plaza in Meriden. L met the defendant at Ames, where he did plainclothes security work. L's first physical contact with the defendant occurred in May, 1990. In a conversation with the defendant in the employee's lounge, she agreed to go out for coffee with him. At the end of their conversation, the defendant grabbed and kissed her. She stepped back and told him that she "could not do this," and that she was interested only in having coffee with him. She subsequently canceled the plans to have coffee with the defendant.

Later that month, on May 13, 1990, the defendant told L to go up to the security office to pick up some shoes that needed to be reshelved. While she was alone in the office with the defendant, he began rubbing against her. His hands rubbed her buttocks and shoul-

---

[4] Because we are remanding this case for a new trial and cannot conclude that the issue concerning the *Secondino* argument by the prosecution will recur on retrial, we need not address this issue. *State* v. *Jones*, 35 Conn. App. 839, 647 A.2d 43 (1994).

ders. He pulled down his elastic waistband pants and exposed his penis. L told him to "put that away." He laughed at her and said, "You're going to eat me." The defendant moved toward L and, as she tried to evade him, he put his hand on the back of her head, pulled her toward him and pushed his penis into her mouth. Ultimately, he ejaculated onto her smock. L left the room and did not tell anyone about the incident because she was afraid no one would believe her.

L lost her job when the store closed in the summer of 1990. In September, 1990, she applied for a job at an Ames store in Meriden, and was hired as a "trial manager" in the jewelry department. The defendant was also working at that store. On September 11, 1990, the defendant told L that he needed to talk with her during her break about management issues. At her break, L went into the security office. The defendant told L that there had been complaints that she had left her department unattended. He told her she had to listen to her managers. The defendant then locked the door and pulled his pants down. She saw that he was wearing white underwear with red lettering. The defendant said, "Kiss me, baby," and began to kiss her. He put his hands all over her, touching her private parts. L went to the door and tried to unlock it; the defendant said, "I'll get the door, sweetie." He opened the door and said, "Maybe next time I'll get you." She said she was going to report him for "job abuse" and left the office.

Immediately after L had left his office, the defendant spoke with Patricia Barnis, an Ames assistant manager. He told her that L was "crazy" and that she was "making up a lot of stories." Barnis said that the defendant asked her later that day "how much would it cost him" for her to keep quiet about having seen L leave his office.

The defendant followed L to the office of John Carlson, the store manager. L told Carlson about the alleged assault. She also told him that the defendant had previously assaulted her in the Centennial Plaza store, where he had forced her to have oral sex with him. The defendant denied the allegations to Carlson. Carlson called Jeff Hanlon, the district security manager, to come to the store to investigate L's allegations. L and the defendant each wrote a statement and spoke with Hanlon.

L told her husband about these events, including those occurring at the Centennial Plaza store. Her husband called the police. A statement was taken, and the next day Detective Ted Standish of the Meriden police department took an additional statement from L in her husband's presence. Standish secured a warrant for the defendant's arrest on September 14.

The defendant voluntarily went to the police station that same day. Standish informed the defendant of his *Miranda* rights and secured his waiver. He suggested that the defendant might want to give a statement because L had provided a substantial amount of detail, including the color of the defendant's underwear. The defendant asked what she had said, and Standish, using an interviewing technique, answered that she had said his underwear was bright yellow. The defendant said that he had been wearing underwear that was "white with red lines."

The defendant's testimony concerning the events of September 11, 1990, differed substantially from that of L. He said that after he mentioned the complaints about L's work, she had "changed facial expressions" and said that her husband often asked her to perform fellatio. The defendant testified that he ended the conversation at that point and went to the employee lounge to get a cup of coffee. He saw L outside the lounge,

holding her hand to her hair. She said, "Rick, this fucking job is getting to my head and I want to quit and you're going to be fired." He followed her upstairs as she went to talk to Carlson.

The defendant denied that he had ever had sex or sexual contact with L at the Centennial Plaza store. He said that he had spoken with Carlson earlier in the day because the service desk personnel had complained that L was leaving the jewelry department unattended. Carlson, who was extremely busy that day, did not recall the conversation, but L had seen the defendant talking with Carlson before he spoke to her.

The defendant agreed that he had told Barnis that L had accused him of forcing her to have sex, but recalled that the conversation had taken place after L had spoken to Carlson, not before. He denied that he offered Barnis money to keep quiet.

I

The defendant claims that the trial court improperly denied his motion to introduce evidence of L's prior claims of rape pursuant to Connecticut's rape shield statute, General Statutes § 54-86f, thereby denying the defendant his right of confrontation as protected by the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. We agree.

For a defendant to introduce evidence of a victim's prior sexual conduct, the proffered evidence must fall into one of the four delineated exceptions provided by the rape shield statute. The evidence is admissible only after a hearing on a motion to offer such evidence containing an offer of proof. See General Statutes § 54-86f. We note that, in this case, the defendant did not frame his request in language employing the words "move" or "motion." The record is clear, however, that he was

seeking permission to offer the type of evidence covered by § 54-86f. The remarks of both the state and the trial court indicated their understanding that the defendant's request was a motion under that section.[5] We

[5] The transcript includes the following exchange, for example.

"[The Court]: Now, you want to offer something. Go ahead, offer whatever it is you want to offer. [The state] has some objection to some parts of it, I suppose. . . . Does the rape shield statute have a number?

"[Defense Counsel]: Section 54-86f. I'm relying on subsection four although two also gets into it.

"[The Court]: Two and four.

"[Defense Counsel]: Issue of credibility.

"[The Court]: Do you have any objection?

"[The State]: Some parts of it, yes.

"[The Court]: You want an opportunity to go through it and isolate them and pick out what it is you wish to object to?

"[The State]: It is any reference to the prior sexual—it is any reference to any prior sexual assaults committed upon the person of [the victim]. . . . If I understand the offer, and frankly since he's already brought up the incest, which I never thought we were going to hear about without an offer of proof, I suppose I would include that. I don't know how counsel drew a line somewhere between the time we were going to have an offer of proof and the time he brought up the incest.

"[The Court]: [Counsel for the defense] subsection two and subsection four of the statute 54-86f—what is it you claim has occurred that makes this evidence admissible? . . . He objects to any records that include prior sexual history. What is your claim with respect to the admissibility? What part of this statute section two and section four do you claim you have satisfied?

"[Defense Counsel]: Considering the history of this person from '79 to current where she has hallucinations, where she has delusions, paranoia, again talking from '79 to the present time she had sex hallucinations. These are all the questions that I would make an offer of proof on . . . . I mean I believe that I should be able outside the presence of the jury to get—

"[The Court]: No, sir. You are offering an exhibit. There is objection based on the rape shield law. That's what I'm deciding on now.

"[Defense Counsel]: I'm trying to make a stronger case. If I'm able to question this witness outside the presence of the jury as to whether these rapes actually took place, then if I was able to do that and it was clear or obvious or strong probability these rapes never took place, I would be introducing—I would want to introduce the reports about them and the oral testimony.

"[The Court]: The rape shield law does not just protect the victim from having questions asked about that subject in the presence of the jury, it protects the person from having questions asked about that subject."

have often stated that "we will not exalt form over substance"; *State* v. *Rosedom*, 34 Conn. App. 141, 143, 640 A.2d 634 (1994); *Wilton* v. *McGovern*, 33 Conn. App. 517, 521, 636 A.2d 870, cert. denied, 228 Conn. 928, 640 A.2d 116 (1994); *Connecticut National Bank* v. *Browder*, 30 Conn. App. 776, 779, 622 A.2d 588 (1993); *Tolland Bank* v. *Larson*, 28 Conn. App. 332, 337, 610 A.2d 720 (1992); and we will not do so where it was clear to all parties involved that a motion was being made. Because the record reveals that both parties and the trial court unmistakably understood the request at issue to be a motion under § 54-86f, we will proceed on that basis.

The defendant claimed that the proffered evidence came within either the second or fourth exception, that it was "offered by the defendant on the issue of credibility of the victim," or "otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." General Statutes § 54-86f (2) and (4). The issue arose at trial while the defendant was in the process of attempting to impeach L's credibility, attacking her ability to perceive, recollect and report reality accurately. The defendant was questioning L about her 1991 medical records, including inquiries into delusions and hallucinations of a highly sexualized nature that the records indicated the victim had experienced. The jury was excused and the defendant told the trial court that he wanted to cross-examine L about the prior claims of rape contained in the medical records.[6] The defendant presented a compelling argument based on the 1991 medical records, which indicated that she had made two prior claims of rape and had experienced delusions and hallucinations of a highly sexualized

---

[6] The records indicated that L had stated in an initial interview that she had been raped when she was seventeen and gang raped when she was twenty-one.

nature, for cross-examination pertaining to prior claims of rape. In particular, the defendant sought the opportunity to question the victim in the course of an evidentiary hearing on the § 54-86f motion. The defendant's attorney stated: "I'm trying to make a stronger case. If I'm able to question this witness outside the presence of the jury as to whether these rapes actually took place, then if I was able to do that and it was clear or obvious or strong probability these rapes never took place, I would be introducing—I would want to introduce the reports about them and the oral testimony." The trial court noted that the state objected: "There is objection based on the rape shield law." The trial court then inquired of counsel for the defendant whether he had "some basis in fact as a result of your investigation of this case to conclude that the rapes that she—that there's an indication in the records she [said] had occurred to her back in 1970 or '80, that those did not in fact occur?" When counsel responded, "No, I have none." The trial court sustained the objection, concluding that "[t]he rape shield law does not just protect the victim from having questions asked about the subject in the presence of the jury, it protects the person from having questions asked about that subject." The effect of the ruling was to preclude the defendant from producing the victim's testimony in the course of the hearing on the § 54-86f motion. We conclude that the trial court exceeded its discretion as it applied the statute in this case.

In *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), the first case to interpret § 54-86f, we held that the rape shield statute was " 'enacted specifically to bar or limit the use of . . . sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material.' " The statute "excludes evidence of prior sexual conduct of the victim of a sexual assault, unless

one of the statutory exceptions is satisfied." *State* v. *Christiano*, 228 Conn. 456, 469, 637 A.2d 382, cert. denied,    U.S.    , 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). "Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. . . . *State* v. *Cassidy*, [supra, 379]."[7] (Citations omitted; internal quotation marks omitted.) *State* v. *Christiano*, supra, 469–70.

Since *State* v. *Cassidy*, supra, 3 Conn. App. 374, the rape shield statute has come under judicial scrutiny many times. Neither this court nor the Supreme Court, however, has had occasion to determine the circumstances under which the trial court may exercise its discretion to refuse to permit the defendant to offer the victim's testimony in the course of the hearing under § 54-86f. In all the cases previously decided, where a defendant moved to introduce evidence of the victim's

[7] The legislative history pertaining to the consideration of the 1983 amendment to the rape shield statute indicates that the addition of a requirement of an offer of proof when making a motion to offer evidence of a victim's prior sexual conduct would make the law more protective of the privacy rights of the victim. "This bill would require that the motion to offer evidence on prior sexual conduct contain an offer of proof . . . ." 26 S. Proc., Pt. 5, 1983 Sess., p. 1798, remarks of Senator Howard T. Owens, Jr. "The purpose of this bill is to place further restriction on the admissibility of evidence of prior sexual conduct. It would strengthen the law which was passed last year." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1983 Sess., p. 94, remarks of Senator Amelia Mustone.

prior sexual conduct, the trial court allowed an evidentiary hearing to determine the admissibility of the evidence. *State* v. *Christiano*, supra, 228 Conn. 456; *State* v. *Rinaldi*, 220 Conn. 345, 599 A.2d 1 (1991); *State* v. *Kelly*, 208 Conn. 365, 545 A.2d 1048 (1988); *State* v. *Siering*, 35 Conn. App. 173, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994); *State* v. *Kindrick*, 30 Conn. App. 56, 619 A.2d 1 (1993); *State* v. *Williams*, 20 Conn. App. 263, 565 A.2d 1365 (1989); *State* v. *Butler*, 11 Conn. App. 673, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987); *State* v. *Daniels*, 8 Conn. App. 190, 512 A.2d 936 (1986); *State* v. *Jones*, 8 Conn. App. 44, 510 A.2d 467 (1986). Those decisions did not indicate, however, that the right to offer the victim's testimony as to sexual conduct in the course of an evidentiary hearing is automatic once a motion is filed. We conclude, in fact, that a determination that a defendant is entitled to an evidentiary hearing involving the victim's testimony is not automatic but, instead, is subject to the discretion of the trial court.[8]

"Restrictions on the scope of cross-examination are within the sound discretion of the trial court. *State* v. *Castro*, 196 Conn. 421, 425, 493 A.2d 223 (1985). . . . 'To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were clearly prejudicial.' [*State* v. *Johnson,* 21 Conn. App.

---

[8] Our determination does not constitute the creation of an additional step in the process. Rather, what is involved is the determination of the defendant's right in a given case to cause the victim to take the witness stand for the purpose of answering questions concerning sexual conduct that the rape shield law was enacted to protect. If the right is automatic and no showing is required, as the dissent's reading of the statute seems to suggest, there is nothing to prevent such evidentiary hearings to be used routinely as *fishing expeditions* into the prior sexual conduct of the victim. In this case, the trial court allowed the defendant the right to be heard on the motion. The court exercised its discretion and denied the defendant's request for a further evidentiary hearing involving the victim's testimony on matters of sexual conduct.

291, 297, 573 A.2d 1218 (1990)]." *State* v. *Adams*, 36 Conn. App. 473, 480, 651 A.2d 747, cert. granted, 232 Conn. 913, 654 A.2d 356 (1994). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 35 Conn. App. 279, 285, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

Because this is an issue of first impression, it is not surprising that few jurisdictions with rape shield statutes similar to Connecticut's have decided the issue. We note, however, that the Court of Appeals of Idaho, which has a rape shield statute similar to § 54-86f, has addressed the issue in a decision that we find persuasive.[9] Neither the Idaho statute nor our own specifies that if the defendant must make a preliminary showing of cause in order for the trial court to order an evidentiary hearing on the issue.[10] The Idaho statute, in fact, does not even require an offer of proof, as our

---

[9] Idaho Code § 18-6105 (1987) provides in pertinent part: "The defendant may make application to the court before or during the trial for the admission of evidence concerning the previous sexual conduct of the prosecuting witness. *Upon such application the court shall conduct a hearing out of the presence of the jury as to the relevancy of such evidence of previous sexual conduct and shall limit the questioning and control the admission and exclusion of evidence upon trial. . . .*" (Emphasis added.)

[10] We note that many jurisdictions have made this issue moot by drafting their rape shield statute's procedure for admitting a victim's prior sexual conduct with more specificity than found in our own. See, e.g., Colo. Rev. Stat. § 18-3-407 (1986 & Sup. 1994); Del. Code Ann. tit. 11, §§ 3508, 3509 (1987 & Sup. 1992); Ind. Code § 35-37-4-4 (1994); Pa. Stat. Ann. tit. 18, § 3104 (1983).

Pennsylvania's rape shield statute provides: "A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer

statute does. In *State* v. *Gabrielson,* 109 Idaho 507, 708 P.2d 912 (App. 1985), the Idaho Court of Appeals concluded that under its rape shield statute a preliminary showing was required before a defendant was entitled to an evidentiary hearing on the issue. The court stated that "[c]learly [the rape shield statute] was not intended to allow defense counsel to conduct a 'fishing expedition' into the prior sexual conduct of the victim, even outside the presence of a jury." Id., 510. The *Gabrielson* court relied on *State* v. *Palin,* 106 Idaho 70, 675 P.2d 49 (App. 1983). In *Palin,* the court, upholding the trial court's denial of a hearing, stated: "A party seeking to present evidence must identify that evidence sufficiently to enable the trial court to make an informed ruling. E.g., *Jones* v. *State,* 576 P.2d 997 (Alaska 1978). If a defendant charged with a crime to which consent is a defense wishes to show that prior sexual conduct is relevant, *he must make a preliminary showing which indicates the relevancy. State* v. *Herrera,* 92 N.M. 7, 582 P.2d 384 (1978). . . . Upon the present record we are unable to determine the nature of the evidence sought to be admitted, other than defense counsel's suggestion that the rape victim may have been unchaste." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Palin,* supra, 73.

In *State* v. *Herrera,* supra, 92 N.M. 16, the New Mexico Court of Appeals stated: "The question of relevancy is not raised by asserting that it exists, there must be a showing of a reasonable basis for believing that past sexual conduct is pertinent to the consent issue."

On the basis of the language of § 54-86f and on the reasoning of the sibling state decisions, we conclude

of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a)." Pa. Stat. Ann. tit. 18, § 3104 (b) (1983).

that § 54-86f requires a defendant to make a preliminary showing that the evidence sought to be explored in the evidentiary hearing is relevant. The showing must be sufficient to enable the trial court to make an informed ruling in connection with the exercise of its discretion on the issue. That showing must be made as part of the offer of proof as a prerequisite to obtaining an evidentiary hearing to determine the admissibility of evidence of the victim's prior sexual conduct.[11] This interpretation of our rape shield statute is consistent with its plain language, as well as with the intent of the legislature to protect the victim's sexual privacy in order to shield the victim from undue harassment and embarrassment, without infringing on the constitutional rights of the defendant.

In the present case, we conclude that the defendant's offer of proof satisfied the requirement of demonstrating a sufficient basis for the court to exercise its discretion to allow the defendant to present the victim's testimony in an evidentiary hearing under § 54-86f. In so concluding, we apply the appropriate standard of review for the trial court's evidentiary ruling. " 'The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done.' *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992)." *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993). In this case, the trial court abused its discretion when it concluded that the defendant was not entitled to an evidentiary hearing to determine the

[11] The issue of the showing required as a basis for an evidentiary hearing was precisely what the parties and the trial court were discussing. In sustaining the objection on the failure of the defendant to produce the requested "basis in fact," the trial court premised its ruling on the issue of the requisite showing. The fact that neither the parties nor the court discussed the matter in terms of the court's exercise of discretion does not prevent us from correctly identifying the issue.

admissibility of evidence of the victim's prior sexual conduct. The defendant sought to introduce evidence of the victim's prior claims of rape. *The prior claims of rape, if false, would be relevant.* In *State* v. *Cassidy,* supra, 3 Conn. App. 382, where the defendant wanted to admit evidence of prior claims of sexual assault, we determined that, if a victim had raised a *false claim* before, it was admissible as to the credibility of her testimony in this case. See also *State* v. *Kelly,* supra, 208 Conn. 377. Although the defendant stated that he had no basis for stating that the prior rapes did not occur, the medical records indicating sexual delusions and hallucinations may have supported such an inference.

Unlike the situation in *State* v. *Gabrielson,* supra, 109 Idaho 510, where "counsel for the defendant admitted that at the time of the request for an evidentiary hearing was made no evidence of previous sexual conduct existed and the hearing would in fact be a 'fishing expedition' to make such a determination," the defendant in this case presented evidence that supported an order for a hearing on the matter. The defendant's motion was bolstered by the victim's medical records, which indicated she had made two prior claims of rape and had experienced delusions and hallucinations of a highly sexualized nature. We conclude that the defendant's offer of proof was sufficient to require the court to conduct an evidentiary hearing on the admissibility issue. Because the defendant was denied this opportunity by the trial court, a new trial is required.

## II

Although a new trial is necessary, we must address the defendant's remaining claim because it will likely recur on retrial. The defendant claims that the trial court improperly denied the defendant's request to

order the victim to undergo an independent psychiatric examination in violation of his right to confrontation as protected by the sixth and fourteenth amendments to the United States constitution[12] and article first, § 8, of the Connecticut constitution.[13] We do not agree.

The defendant has a right to put before the jury those facts that will assist it in assessing the credibility of the state's witnesses. Evidence of the mental condition of a witness both at the time of trial and at the time of the incident about which the witness is testifying is admissible to impeach his or her credibility. *State* v. *Pierson,* 201 Conn. 211, 225, 514 A.2d 724 (1986); *Taborsky* v. *State,* 142 Conn. 619, 629, 116 A.2d 433 (1955).

The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek,* 204 Conn. 683, 707, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988); *State* v. *Reardon,* 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and four-teenth amendments to the United States constitution; *Davis* v. *Alaska,* 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas,* supra, 400; and by article first, § 8, of the Connecticut constitu-tion. *State* v. *Torello,* 103 Conn. 511, 513, 131 A. 429 (1925). The defendant is guaranteed more than an opportunity to confront witnesses physically. *Davis* v.

---

[12] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The fourteenth amendment to the United States constitution provides in pertinent part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

[13] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

*Alaska,* supra, 315. The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him; id., 315–16; and " 'to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980). The right of cross-examination is not absolute, however, and the trial court may, in its discretion, limit the testimony; id., 508; although the court may not so restrict cross-examination as to impair the defendant's right to confrontation and deny him a fair trial. *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). We must determine whether, in denying the defendant's request for a psychiatric examination of the complainant, the trial court prevented the defendant from pursuing a relevant line of inquiry, reasonably calculated to elicit facts on which the jury might logically have decided either to disbelieve the victim or to discount or discredit her testimony. *Davis* v. *Alaska,* supra, 315. We conclude that the defendant's right to confrontation was not impaired. We rest this holding not only on the requirements of the federal constitution, but also on state constitutional grounds. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; see *Michigan* v. *Long,* 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State* v. *Jarzbek,* supra, 707–708.

It is within the discretion of the trial court to decide whether to order a psychiatric examination of a witness for the purposes of presenting psychiatric testimony to impeach her credibility. *United States* v. *Pacelli,* 521 F.2d 135, 140 n.4 (2d Cir. 1975), cert. denied, 424 U.S. 911, 96 S. Ct. 1106, 47 L. Ed. 2d 314 (1976); *State* v. *Piskorski,* 177 Conn. 677, 716, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Taborsky,*

139 Conn. 475, 487, 95 A.2d 59 (1953). In *State* v. *Dab-kowski,* 199 Conn. 193, 506 A.2d 118 (1986), our Supreme Court, in dictum, surveyed the law of other states concerning psychiatric examinations of victims in sex offenses. The Supreme Court concluded that the overwhelming majority of states has concluded "that the trial court has discretion to order a psychiatric examination of a complaining witness where compelling reasons are shown on the record." Id., 197–98 n.5.[14] The court, therefore, rejected the "Wigmore rule," which suggests that a "complaining witness, in a case relating to a sex offense, should *always* be compelled to submit to a psychiatric examination." See 3A J. Wigmore, Evidence (Chadbourn Rev. 1970) § 924a.

Here, the defendant's request for a psychiatric examination of L was prompted, not only by the fact that L was schizophrenic at the time of the incident and trial, but also because the defendant claimed that the records kept by L's psychiatrist prior to and during the time of the incident were wholly unsatisfactory in detailing her condition.

The trial court did not abuse its discretion when it denied the defendant's motion for a compelled psychiatric examination of L. The trial court properly determined that allowing access to the psychiatric records sufficiently protected the defendant's right of confrontation. In addition, the trial court admitted portions of the records into evidence and permitted the defendant wide latitude in cross-examining the witness. The trial court in this instance adequately protected the

---

[14] The court went on to state: " 'These authorities reflect, and apparently are in response to, the increased recognition that sex offense victims already have been put through a traumatic experience and are subject to further traumatic experience by being subjected to cross-examination concerning the incident. It necessarily follows that needless possibilities for increasing that trauma should be reduced as much as permissible.' " *State* v. *Dabkowski,* supra, 199 Conn. 197–98 n.5.

defendant's right to confrontation. *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987); *Davis* v. *Alaska,* supra, 415 U.S. 308.

The judgment is reversed and the case is remanded for a new trial.

In this opinion FREEDMAN, J., concurred.

O'CONNELL, J., dissenting. I do not agree with the majority's opinion as it relates to the rape shield statute.

## I

The trial court record does not raise a rape shield question and, therefore, this appeal is not a proper vehicle for construing that statute.

The procedure for raising a rape shield question is clearly set forth in the statute. When a defendant seeks the benefit of one of the statutory exceptions, he must make a motion containing an offer of proof. Lacking the requisite motion, the statutory prohibition against admission of evidence of sexual conduct remains in effect and bars admission of such evidence. Examination of the trial court file discloses that the defendant never made the mandated motion, either in writing or orally.

The defendant was attempting to impeach the victim's credibility by cross-examining her concerning psychiatric records pertaining to prior rape claims. The state objected. Following argument in the jury's absence, the trial court sustained the objection, ruling that, because of the rape shield statute, the defendant could not question the complainant about "the subject."

Whatever the ruling of the trial court, it was not the result of an exercise of its discretion after a rape shield

hearing held pursuant to a motion. This is an attempt to bring the rape shield statute in through the side door and should not be allowed.

## II

Even if the defendant had properly raised the rape shield issue at trial, I would still dissent because of the majority's creation of the requirement of a preliminary showing of relevancy before a trial court may order an evidentiary hearing.

First, the issue of a preliminary showing of relevancy as a prerequisite to a hearing under General Statutes § 54-86f was not raised in the trial court, nor was it argued or briefed by the parties on appeal. It is axiomatic, with exceptions not relevant here, that we will not determine issues not distinctly raised in the trial court and preserved for review. *Madison Hills Ltd. Partnership II* v. *Madison Hills,* 35 Conn. App. 81, 83, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994). In *Lynch* v. *Granby Holdings, Inc.,* 230 Conn. 95, 99, 644 A.2d 325 (1994), the Supreme Court reversed a decision of this court because it addressed an issue sua sponte "rather than at the behest of one of the parties, thereby depriving the parties of an opportunity to brief the issue." Although *Lynch* was a civil jury case, we should learn from its strongly worded rebuke. *Lynch* is an extension of *Lo Sacco* v. *Young,* 210 Conn. 503, 509, 555 A.2d 986 (1989), in which we were reversed for considering a procedural issue sua sponte. We should not consider an issue of this magnitude that has not been fully explored, both in the trial court and by the parties on appeal. See *Jaser* v. *Jaser,* 37 Conn. App. 194, 196–97 n.2, 655 A.2d 790 (1995).

Second, even if I could be convinced that the matter is properly considered sua sponte by this court, I am not persuaded by the merits of the majority opinion. I commence my analysis with the established common

law evidentiary principle that all evidence is admissible unless there is a rule that expressly excludes it. *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 A. 998 (1895); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 6. Absent a statute, sexual conduct evidence had been admissible in Connecticut. This changed in 1982 when the rape shield statute was enacted. General Statutes § 54-86f[1] makes such evidence *"admissible only after a hearing on a motion to offer such evidence containing an offer of proof."* (Emphasis added.) Statutes in derogation of the common law must be strictly construed. *Elliot* v. *Sears, Roebuck & Co.,* 229 Conn. 500, 513, 642 A.2d 709 (1994).

Because of the enactment of the rape shield law, "evidence of the sexual history of a sexual assault victim is now admissible only in clearly and narrowly defined circumstances established in a separate hearing." *State* v. *Rothenberg*, 195 Conn. 253, 259–60, 487 A.2d 545 (1985). Policies underlying this law include protecting the victim's sexual privacy and shielding the victim from undue harassment, encouraging reports of sexual assault and enabling the victim to testify in court with less fear of embarrassment. *State* v. *Rinaldi*, 220 Conn. 345, 346, 599 A.2d 1 (1991); *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

The statute is clear and unambiguous; a defendant who seeks to qualify evidence under one of the four statutory exceptions must make a motion containing an offer of proof. The trial court is directed to hold a hearing on the motion and "[i]f, *after hearing,* the court finds that the evidence meets the requirements of [the statute] and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may

---

[1] In 1983, the words "containing an offer of proof" were added by Public Acts 1983, No. 83-113, and, in 1985, Public Acts 1985, No. 85-347, eliminated references to "prior" sexual conduct throughout General Statutes § 54-86f.

grant the motion." (Emphasis added.) General Statutes § 54-86f. Nowhere in the statute is the trial court given authority to exercise discretion concerning exclusion or admission until after the hearing. Yet, the majority creates a condition precedent to the statutorily mandated hearing on the motion containing an offer of proof.

Denying the defendant a hearing on his offer of proof is contrary to the established law of the state. We determined that a defendant has the right to make an offer of proof in *State* v. *Zoravali*, 34 Conn. App. 428, 433, 621 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994), where we held that "[t]he trial court improperly denied the defendant's request to make an offer of proof. An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review. . . . *State* v. *Lussier*, 7 Conn. App. 528, 531, 509 A.2d 81 (1986). The appellant bears the burden of providing an adequate appellate record through the offer of proof, among other vehicles. *State* v. *Rios*, 30 Conn. App. 712, 715, 622 A.2d 618 (1993) (noting rules of practice through which appellant ensures adequate record). A trial court cannot prevent a defendant from doing so. *State* v. *Lussier*, supra, 532 (noting that trial court could not have prevented defendant from making offer of proof)." (Internal quotation marks omitted.)

Recognizing the personal and sensitive nature of the evidence that may be involved in the hearing, the statute wisely provides that the hearing may be held in camera.[2] The majority goes beyond the statute and grants

[2] Holding the hearing in camera is subject to the court closing requirements of General Statutes § 51-164x; see also Practice Book § 895.

additional protection for the victim by providing that even before the hearing takes place, in camera or in open court, the defendant must establish a preliminary showing of the relevancy of the evidence. I find no justification in our statute or case law for what is, in effect, requiring an offer of proof to make an offer of proof.

I appreciate the majority's sincerity and well-intentioned purpose, but it is not the function of courts to revise statutes. *Howard* v. *Commissioner of Correction,* 230 Conn. 17, 22, 644 A.2d 874 (1995). We must interpret them as written. *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988). Where the language of a statute is clear and unambiguous, the court may not by construction substitute its own idea of what might be a wise provision. *First Bethel Associates* v. *Bethel,* 231 Conn. 731, 739, 651 A.2d 1279 (1995). It is not the function of courts to read into clearly expressed legislation provisions that do not find expression in its words. *Plasticrete Block & Supply Corp.* v. *Commissioner of Revenue Services,* 216 Conn. 17, 27, 579 A.2d 20 (1990). This court must construe the statute without reference to whether we feel that the law might have been improved by the inclusion of other provisions. *Emergency Medical Services Commission* v. *Freedom of Information Commission,* 19 Conn. App. 352, 355, 561 A.2d 981 (1989). It is our duty to apply the law, not to make it. *Murray* v. *Lopes,* 205 Conn. 27, 34, 529 A.2d 1302 (1987); see generally 20 Am. Jur. 2d, Courts § 64 (1995). " 'The intent of the legislature, as [the Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say but in the meaning of what it did say.' " *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 225 Conn. 432, 441, 623 A.2d 1007 (1993), quoting *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981).

The majority lists nine Connecticut cases in which a defendant moved to introduce evidence of the victim's

prior sexual conduct under the rape shield statute and points out that without exception the trial courts allowed an evidentiary hearing to determine the admissibility of the evidence. I submit that those decisions followed the law as written and that it was understood that no attempt could be made to inject a new requirement.

Third, the cases from sibling jurisdictions relied on by the majority do not support its position. The Idaho statute, for example, does not contain an offer of proof requirement. The preliminary showing of reasonable cause, judicially adopted in that state, serves essentially the same purpose as the offer of proof requirement, which our legislature added in 1983.[3] For us to superimpose the requirement of a preliminary showing of relevancy in addition to the statutory offer of proof would establish an unwarranted second obstacle to a defendant's right of cross-examination. *State* v. *Johnson*, 21 Conn. App. 291, 293, 573 A.2d 1218 (1990).

Fourth, the preliminary showing of relevancy requirement as a prerequisite to a hearing on a defendant's offer of proof is contrary to prior decisions of this court. Earlier in this opinion, I pointed out that we have held that a party may not be denied a hearing on an offer of proof. *State* v. *Zoravali*, supra, 34 Conn. App. 433; *State* v. *Lussier*, supra, 7 Conn. App. 532. If we are going to overrule those cases, we should do it only after a thoroughly briefed and argued appeal based on a proper trial court record.

For the foregoing reasons I respectfully dissent from the majority opinion and would affirm the judgment of the trial court.

---

[3] See footnote 1.